Northampton Residents Association, Frank A. Ferraro, T. J. DeJohn, Thomas A. Connell, Jr., William J. Herbert, Donald S. Bowser and Constance C. Harman, Appellants, v. Northampton Township Board of Supervisors, Appellee.

516

Argued January 7, 1974, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR., did not participate.

*Steven A. Cotlar*, with him *Cotlar and Mantz*, for appellants.

*E. Dillwyn Darlington*, with him *Cadwallader, Darlington & Clarke*, for appellee.

*Leonard L. Wolffe*, with him *Stanley A. Uhr, Marc D. Brookman* and *Pechner, Sacks, Dorfman, Rosen & Richardson*, for intervenor-appellee.

OPINION BY JUDGE BLATT, July 30, 1974:

On September 20, 1972, the Board of Supervisors of Northampton Township (Township), enacted an ordinance amending the Township Zoning Code and permitting planned residential developments (Ordinance 129). On September 27, 1972, the Township enacted another ordinance (Ordinance 130), this one rezoning a tract of 319 acres owned by Verree Welsh Homes, Inc. (Verree Welsh) so as to permit the use of this property as a planned residential development.

On October 18, 1972, the Northampton Residents Association (Association), a non-profit corporation, filed a complaint[1] in the Criminal Division (later transferred by stipulation of the parties to the Civil Division) of the Court of Common Pleas of Bucks County challenging the validity of Ordinances 129 and 130. The Township filed an answer, and Verree Welsh intervened and filed preliminary objections and an answer. Subsequently both the Township and Verree Welsh filed motions for summary judgment, attaching affidavits thereto in support of these motions. On May 21, 1973, the lower court granted the motions for summary judgment and dismissed the Association's appeal. Also on that date, the lower court denied a petition to intervene filed by six individuals (intervenors). The Association and the would-be individual intervenors have appealed to this Court.

No permits having been issued pursuant to the ordinances in question at the time of the commencement of this action, only issues pertaining to the procedural, rather than the substantive, validity of the ordinances could properly have been raised. *Gerstley v. Cheltenham Township Commissioners,* 7 Pa. Commonwealth Ct. 409, 299 A. 2d 657 (1973). *See* Sections 915 and 1005 of the MPC, 53 P.S. §§10915 and 11005. The lower court, therefore, properly considered only these issues of procedure.

The first issue raised here by the Association relates to the propriety of the lower court's grant of summary

---

[1] The Association's complaint stated that it was filed, in part, pursuant to Section 702 of The Second Class Township Code, Act of May 1, 1933, P. L. 103, *as amended,* 53 P.S. §65741, and certainly the procedures followed by the Associates were consistent with that section. Because not raised by the parties, we need not decide the issue, but we question whether such procedures were proper in view of Sections 1001 and 1003 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P. L. 805, *as amended,* 53 P.S. §§11001 and 11003.

judgment. We note that, when the motions for summary judgment were made, answers had been filed and the record had thus been closed. A motion for summary judgment was appropriate, therefore, and we believe that the lower court did not err by granting it. The Association asserts that summary judgment should not have been granted because there were genuine issues of material fact present, and it is true, of course, that the complaint and the answers filed thereto did raise issues of fact. It is also true, however, that the Township and Verree Welsh filed extensive affidavits in support of their motions for summary judgment, while no contravening affidavits were filed by the Association. Where, as here, no opposing affidavits are filed, a court is bound by Pa. R. C. P. No. 1035 to conclude that there are no genuine issues as to any of the material facts contained in the affidavits, and any allegations to the contrary which are contained in the pleadings do not properly raise a genuine issue of material fact. Once a motion for summary judgment is made, a party may not rely on the controverted allegations of the pleadings. "A motion for summary judgment under Rule 1035 would be a useless procedural appendage if a court were required to deny such a motion because the original pleadings raised a genuine issue of material fact. Issues of fact in the pleadings are significant only when there are no supporting affidavits before the court." *Phaff v. Gerner*, 451 Pa. 146, 151, 303 A. 2d 826, 829-830 (1973). The affidavits filed herein by the Township and Verree Welsh covered all issues of fact relevant to this case, and they were in no manner controverted by the Association.

The lower court held that the Association lacked standing to challenge the validity of the ordinances in this action because it did not appear before the Board of Supervisors (Board) at the hearings held to consider the ordinances in question. The affidavits filed by

the Township and Verree Welsh establish that the Association at no time appeared before the Board, and the Association has filed no opposing affidavit to dispute that allegation. It may be true that certain members of the Association appeared as witnesses before the Board, but they did not in any way identify themselves as being part of the Association, nor did they state that they were speaking on its behalf, and their mere appearance as witnesses would certainly not be sufficient. As our Supreme Court has stated: "There is but one way to become a party litigant in a court and that is by appearing in the proceedings. Appearing as a witness is not the participation necessary to establish appellants' right to review." *Dethlefson Appeal,* 434 Pa. 431, 433, 254 A. 2d 6, 7 (1969). This Court has held in *Blade Mulla, Inc. v. Carlson,* 7 Pa. Commonwealth Ct. 381, 298 A. 2d 920 (1972), that persons failing to appear before a governing body which is considering land development plans have no standing to appeal from the action of such body. We believe that this same requirement also applies to appeals alleging a defect in the process of enactment or adoption of a zoning ordinance.[2] Defects in the process of enactment are generally such as can be cured by the governing body itself prior to final enactment, and it should be given every opportunity to correct them before the aid of the judicial process is invoked. For that reason, therefore, persons having standing to appeal from the enactment of a zoning ordinance because of defects in the process of adoption must be persons who have appeared before the governing body. Not having met this requirement, the Association lacked standing to bring this appeal. :

---

[2] There would, of course, be an exception to such a requirement where the defect alleged is the failure to hold a hearing pursuant to Sections 608 and 609 of the MPC, 53 P.S. §§10608 and 10609, or to provide sufficient notice thereof.

Another problem of standing arises in the consideration of whether or not the Association, which has no interest in any land located in the Township, can be a proper party to bring this action. In its complaint, the Association stated that the complaint was filed pursuant to the provisions of Section 702 of The Second Class Township Code, 53 P.S. §65741,[3] as well as the MPC. Section 702 of The Second Class Township Code provides for the filing of a complaint by a "person aggrieved," and, while Section 1003 of the MPC, 53 P.S. §11003 does not specifically provide who may bring an appeal pursuant thereto, it should be noted that challenges to the validity of a zoning ordinance are spoken of throughout the MPC as being brought only by a "landowner" or by a "person aggrieved." We believe it reasonable to hold, therefore, that an appeal raising the question of an alleged defect in the process of enactment of a zoning ordinance may be brought only by a "landowner" whose land is directly affected by the ordinance in question, or by a petitioner who is clearly a "person aggrieved." Here the Association is not a "landowner" (although some of its members might well be), and we believe that it is not a "person aggrieved," either, in the absence of evidence that it is the owner of property in the community in question or that it is the authorized agent of any such owner.[4] *Committee to Preserve Mill Creek, O'Ryan, Moore and Krafchek v. Secretary of Health and Shires Swim Club,* 3 Pa. Commonwealth Ct. 200, 281 A. 2d 468 (1971); *Cleaver Ap-*

---

[3] As we noted in footnote 1, *supra*, the addition of Section 1003 to the MPC by the Act of June 1, 1972, P. L.    , No. 93, may well mean that this section provides the sole means for appealing from alleged defects in the process of enacting a zoning ordinance.

[4] Section 908(3) of the MPC, 53 P.S. §10908(3), permits civic or community organizations to be parties before a zoning hearing board. We do not believe, however, that this affects direct appeals to the court under Section 1003.

*peal,* 24 Pa. D. & C. 2d 483 (1961). We must hold, therefore, that the Association lacked standing to institute this action.

The Township and Verree Welsh also contend that the Association failed to comply with Section 1008(3) of the MPC, 53 P.S. §11008(3), because notice of the appeal from Ordinance 130 was not served upon Verree Welsh within seven days of the appeal. Notice was clearly required, and the Association admittedly did not serve such notice. Where, however, the delay in serving notice is not of unreasonable length or where there is no prejudice shown to the property owner, we believe that failure to serve such notice within seven days should not, standing alone, be the basis for dismissing an appeal. Here, Verree Welsh did petition to intervene thirty days after the commencement of the action, and there is no allegation that the delay of the Association in giving notice has resulted in any prejudice. In such a situation, we do not believe this delay alone would justify dismissal of the action.

As to the petition to intervene filed by the intervenors, we must affirm its dismissal by the court below. As noted above, the Association had no standing to institute this action and, therefore, such action was a nullity from its institution. The intervenors, although they might have had standing on their own to appeal in the first place, were seeking now to substitute themselves for the Association and thus breathe life into this proceeding by attempting to intervene well over thirty days after the effective dates of the ordinances in question, and this is clearly impossible. *Frank v. Zoning Hearing Board,* 6 Pa. Commonwealth Ct. 462, 296 A. 2d 300 (1972).

The lower court also ruled on some of the allegations raised by the Association as to defects in the process of enactment of the ordinances and, because the Association has again raised these issues before this Court,

we shall also consider them briefly. The Association alleges that the Board violated Section 609 of the MPC, 53 P.S. §10609 because the provision of Ordinance 129 concerning the maximum amount of land permitted to be used for any planned residential development was increased from 250 acres to 320 acres after the last public notice of the proposed ordinance had been given. Section 609 provides, *inter alia*: "If, after any public hearing held upon an amendment, the proposed amendment is revised, or further revised, to include land previously not affected by it, the governing body shall hold another public hearing, pursuant to public notice, before proceeding to vote on the amendment."

Clearly the above section is intended to prevent municipalities from enacting zoning amendments which affect specific tracts of land without first having published notice of intention so to act. Ordinance 129 merely authorized the location of planned residential developments in the Township and the requirements for their approval, and was not concerned with any particular tract of land. The fact that another public hearing was not held on this ordinance did not violate the above portions of Section 609. The Association also contends that Ordinance 129 as adopted was substantially different from the ordinance included in the notice given prior to the last public hearing thereon. But, as the lower court correctly stated: "An examination of the changes alluded to in the finally adopted ordinance reveals that they are largely inconsequential and are not substantial in nature." The Association further alleges that both ordinances were improperly advertised because such advertisement was placed in a weekly newspaper. Sections 608 and 609 of the MPC, 53 P.S. §§10608 and 10609 require public notice of public hearings to be held to enact or amend a zoning ordinance, and Section 107(18), 53 P.S. §10107(18), provides that such public notice shall consist of publica-

tion "once each week for two successive weeks in a newspaper of general circulation in the municipality." Clearly publication in a weekly newspaper meets this requirement if it is a "newspaper of general circulation," and this latter term is defined in Section 3(4) of the Newspaper Advertising Act, Act of May 16, 1929, P. L. 1784, 45 P.S. §3(4) as "a newspaper issued daily, or not less than once a week, intended for general distribution and circulation, and sold at fixed prices per copy per week, per month, or per annum, to subscribers and readers without regard to business, trade, profession or class." Affidavits submitted with the motions for summary judgment specifically aver the newspaper in question to be one of general circulation, and these affidavits were never contradicted.

We have reviewed the other minor arguments raised by the Association, and find them likewise to be without merit.

For the above reasons, therefore, we affirm the order of the court below.

---

CONCURRING AND DISSENTING OPINION BY JUDGE ROGERS:

I concur in the affirmance of the order below; and I have no quarrel with the majority's opinion except for the conclusion that the Northampton Residents Association lacked standing to complain of the enactment of the zoning amendments because the Association failed to "appear before the Board of Supervisors (Board) at the hearings held to consider the ordinance in question."

Under the law, citizens of political subdivisions desiring to challenge the procedures employed in the adoption of ordinances, including amendments to zoning ordinances, are not required to appear at the hearings of governing bodies conducted for the purpose of considering such legislation. Certainly there was no such

requirement under Section 702, cl. XLI of The Second Class Township Code, Act of May 1, 1933, P. L. 103, 53 P.S. §65741, pursuant to which the complaint in this case was filed.[1] *See Griffith v. McCandless Township,* 366 Pa. 309, 77 A. 2d 430 (1951). Also certainly, Section 1003 of the Municipalities Planning Code, Act of July 31, 1968, P. L. 805, as amended, 53 P.S. §11003, does not require appearance at the governing body's hearing as a prerequisite to standing to appeal on procedural grounds.[2] Other provisions of the MPC plainly suggest the contrary. Sections 1005, 1006 and 1007, 53 P.S. §§11005, 11006, 11007, which deal with substantive challenges, all provide for appeals by "any *party* aggrieved" (emphasis supplied), language notably absent from present Section 1003.

*Dethlefson Appeal,* 434 Pa. 431, 254 A. 2d 6 (1969), cited as authority by the majority, was concerned with former Section 1003 which applied to all zoning appeals and which provided simply "[z]oning appeals may be taken to court by any *party* before the board, or any officer or agency of the municipality" (emphasis supplied). *Dethlefson,* moreover, was concerned with an appeal from a zoning hearing board's grant of a variance, not with a complaint of procedural irregularity in the adoption of an ordinance. *Blade Mulla, Inc. v. Carlson,* 7 Pa. Commonwealth Ct. 381, 298 A. 2d 920 (1972), also cited by the majority, was an appeal from a governing body's action in disapproving a particular development plan, not a complaint that an ordinance

---

[1] The continued effectiveness of Section 702 of The Second Class Township Code to zoning challenges was questioned but not decided by the majority.

[2] Section 1003 is in full: "Questions of an alleged defect in the process of enactment or adoption of any ordinance or map shall be raised by an appeal taken directly from the action of the governing body to the court filed not later than thirty days from the effective date of the ordinance or map."

was defectively adopted. In *Blade Mulla* we simply followed *Dethlefson*.

In short, the MPC does not now require that a citizen desiring to challenge a zoning amendment on procedural grounds must have appeared at the hearing at which the governing body considered whether it should adopt the proposed new legislation.

The majority recognizes that exceptions would have to be made for challenges to the failure to conduct a hearing or give notice as provided by Section 609, 53 P.S. §10609. After concluding that the Association had no standing because of failure to appear at the supervisors' hearing, the majority inconsistently notes and discusses the Association's challenge based on the alleged insufficiency of the notice, one of the exceptions.

Judge KRAMER joins in this Concurring and Dissenting Opinion.